IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JUN 0 8 2009

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | | |
|---|---|---|
| CLARENDON NATIONAL INSURANCE COMPANY, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. B-07-140 |
| RAUMAN GROUP, INC., d/b/a GREASE MONKEY INTERNATIONAL, | § § § § | |
| Defendant. | § § | |

## OPINION & ORDER

BE IT REMEMBERED that on June 8, 2009, the Court considered Plaintiff Clarendon National Insurance Company's Motion for Summary Judgment on Defendant's Counter-Claims, Dkt. No. 34, and Third Party Defendant Bert Whisenant Insurance Agency's Motion for Summary Judgment and Brief in Support. Dkt. No. 29.

Plaintiff Clarendon National Insurance Company ("Clarendon") filed suit against the Defendant Rauman Group, Inc., d/b/a Grease Monkey International ("Grease Monkey") for a declaratory judgment that Clarendon has no duty to defend or indemnify Grease Monkey under a commercial general liability policy issued by Clarendon to the Defendant. *Id.* at 1. Grease Monkey is involved in an ongoing lawsuit ("Galvan lawsuit") involving the estate, the surviving family of Dora Galvan ("Galvan") and her unborn child in state court. Eddie Galvan, *et al.* v. Rauman Group, Inc., d/b/a Grease Monkey, No. 2007-04-2069-D, (103rd Dist. Ct, Cameron County, Tex., Apr. 23, 2007). Dkt. No. 1, at 2. The suit addresses Grease Monkey's potential liability for alleged negligence in inspecting the tires on Galvan's vehicle. *Id.* The state court petition alleges that Galvan was killed when the tread belt separated from the tire on her vehicle, which Grease Monkey had inspected five to six weeks before the accident. *Id.*

After answering the state court suit, Grease Monkey made demand upon Hallmark

General Agency, the managing general agent for Clarendon, requesting Clarendon to "provide coverage for the defense of this case along with any resulting judgment or settlement of this matter." Dkt. No. 23, Ex. B, at 2. Effective Claims Management, Clarendon's third-party claims administrator denied the request because Grease Monkey's liability coverage was limited to risk arising out of the "snow cone concession stand" on Grease Monkey's premises. *Id.* at Ex. C. Thereafter, Clarendon filed the instant suit.

On April 4, 2008, Grease Monkey answered this suit, entering a general denial of Clarendon's complaint and counterclaiming against Clarendon for declaratory relief establishing that the policy covered defending and indemnifying Grease Monkey in the Galvan lawsuit and seeking relief for Clarendon's breach of contract. Dkt. No. 12, at 6. Grease Monkey also filed claims in the alternative against Bert Whisenant Insurance Agency, LP, ("Whisenant") for indemnity because of its negligence, breach of contract, and negligent misrepresentation in not securing appropriate coverage for Grease Monkey from Clarendon. *Id.* at 6-7.

On March 25, 2009, this Court granted Clarendon summary judgment on its claims that under Texas law, it had no duty under its policy with Grease Monkey to defend or indemnify Grease Monkey for claims arising out of the operation of its quick-lube garage operations. Dkt. No. 31. At that time, Clarendon did not move for summary judgment on Grease Monkey's counterclaims. *Id.*

On April 17, 2009, Clarendon filed its current motion for summary judgment against Grease Monkey's counterclaims. Dkt. No. 36. Clarendon argues that this Court's earlier Order granting summary judgment in favor of its claims necessarily precludes the relief that Grease Monkey seeks in its counterclaims. Clarendon argues that the court should therefore grant its request for summary judgment against Grease Monkey's counterclaims. *Id.* at 4-6. On March 20, 2009, Whisenant filed its motion for summary judgment on Grease Monkey's claims against it. Dkt. No. 29. Whisenant argues that it fulfilled its obligations to Grease Monkey to procure the insurance that Grease Monkey requested. *Id.* at 1-2. When Grease Monkey's insurance company cancelled its commercial general liability policy covering the garage, Whisenant alleges that it notified Grease Monkey, attempted to procure replacement coverage, and again notified Grease Monkey when it

could not secure coverage. *Id.* Therefore, Whisenant argues it met its duty of care to Grease Monkey, and Grease Monkey's negligence claim fails as a matter of law. *Id.* at 4. Furthermore, Whisenant argues that Grease Monkey's breach of contract claim fails as a matter of law because there was no written contract between the parties, and even if a contract is said to exist, Whisenant met its duties under any agreement. *Id.* Finally, Whisenant argues that Grease Monkey's negligent misrepresentation claim fails because Grease Monkey has not identified any false information that it alleges Whisenant provided to it. *Id.* Grease Monkey has not filed responses to either motion.

I.     **Summary Judgment Standard**

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 752 (5th Cir. 2006); Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, LLC*, 448 F.3d at 752 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court must view all evidence in a light most favorable to the non-moving party. *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 36 F.3d 1069, 1075 (5th Cir. 1994). Thus, the Court will not, "*in the absence of proof, assume that the nonmoving party could or would prove the necessary facts.*" *Id.* (emphasis in original) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)); *see also* TIG Ins. Co. v. Eagle, Inc., Civ. Action No. 05-0179, 2007 WL 861153, at *2 (E.D. La. 2007) (quoting *Little*, 36 F.3d at 1075).

The non-movant has no duty to respond to a motion for summary judgment until the moving party meets its burden of showing that no genuine issue of fact exists. *See Lockett*, 337 F. Supp. 2d at 891 (citing Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993)). Thus, a Court may not grant summary judgment simply because there has been no

opposition to the motion. Hibernia Nat'l Bank v. Admin. Cental Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985) (citing John v. Louisiana (Bd. of Trustees for State Colleges and Universities), 757 F.2d 698, 709 (5th Cir. 1985)). If the movant fails to meet its initial burden, the nonmovant is not required to respond to the motion. *John*, 757 F.2d at 708. However, if the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett*, 337 F. Supp. 2d at 891; see also *Ashe*, 992 F.2d at 543. The nonmovant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED. R. CIV. P. 56(e); *Piazza's Seafood World, LLC*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" Arbaugh v. Y&H Corp., 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

II. **Analysis**

A. *Clarendon's Motion for Summary Judgment*

The Court finds that Clarendon is entitled to summary judgment on Grease Monkey's counterclaims. Grease Monkey had sought declaratory relief diametrically opposed to that sought by Clarendon, asking the court to declare that Clarendon has a duty to defend and indemnify Grease Monkey against the claims raised against Grease Monkey in the underlying lawsuit. Dkt. No. 12, at 6. Also, Grease Monkey had counterclaimed for breach of contract against Clarendon for failing to defend and indemnify Grease Monkey against the claims. As this Court had found in its original Order granting summary judgment, Grease Monkey's insurance policy unambiguously provides that general commercial liability coverage under the policy is limited to liability arising out of the operation of the snow cone stand. Dkt. No. 31, at 6. Therefore, the Court held that

Plaintiff has neither the duty to defend nor indemnify Defendants in the underlying state court lawsuit. *Id.* The Court declared that there is no commercial general liability coverage for the claims in the Galvan lawsuit arising from the automobile service garage operations on the premises, because such coverage is precluded pursuant to the designated premises limitation endorsement in the Clarendon policy. *Id.*

The Court has already held that there is no genuine issue of material fact regarding whether Clarendon had a duty to defend or indemnify Grease Monkey in the underlying lawsuit. The Court grants Clarendon's motion for summary judgment on Grease Monkey's counterclaims which were based on the argument that the insurance policy does not limit or exclude coverage for the claims made against Grease Monkey in the underlying lawsuit and the argument that the policy is ambiguous and therefore should be construed against the drafter and in favor of coverage. *See* Dkt. No. 12, at 6. Finally, this Court holds that Grease Monkey has failed to create a genuine issue of material fact as to whether Clarendon had an obligation to defend and indemnify Grease Monkey in the underlying lawsuit, and therefore Clarendon is entitled to summary judgment against Grease Monkey's breach of contract counterclaim.

### B. Whisenant's Motion for Summary Judgment

In support of its Motion for Summary Judgment against Grease Monkey's claims that it failed to procure coverage, Whisenant attaches (1) a copy of Grease Monkey's original policy from 1994 to 1998 with Millers Insurance Company, which provided coverage for general commercial liability for claims arising out of the oil-change garage, Dkt. No. 29, at Ex. 2;[1] (2) a letter dated July 22, 1998, from Whisenant to Grease Monkey informing Grease Monkey in advance to the termination of the policy that Millers had decided to not renew Grease Monkey's policy because of multiple claims against Grease Monkey, *Id.*, Ex. 5; (3) a letter dated December 17, 1998, from Whisenant to Grease Monkey reminding Grease Monkey of Millers' decision to not renew the general commercial liability portion for the oil-change garage, *Id.*, Ex. 6; (4) documentation of multiple attempts

---

[1] Millers Insurance Company entered insolvency in 2003. Clarendon assumed the coverage for Grease Monkey's properties and snow cone operation, including all endorsements and limitations of coverage. Dkt. No. 29, at 3.

by Whisenant to get quotes for a replacement policy with different insurance companies, *Id.,* Ex. 7,8; and (5) a letter from Whisenant to Grease Monkey notifying Grease Monkey of Whisenant's inability to obtain replacement garage liability coverage. *Id.,* Ex. 6.

### 1. Negligence

In Texas, an insurance agent who agrees to attempt to place an insurance policy owes a duty to a client to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so. *May v. United Services Ass'n of America,* 844 S.W.2d 666, 669 (Tex. 1992). In *Burroughs v. Bunch,* 210 S.W.2d 211 (Tex. Civ. App.–El Paso 1948, writ ref'd), an agent was held liable for fire damage to a house being built by his customer when the agent, after agreeing to have a builder's risk policy issued on the house, failed to notify the customer that he had not procured such a policy. *Id.* at 214. Similarly, in *Scott v. Conner,* 403 S.W.2d 453 (Tex. Civ. App.–Beaumont 1966, no writ), an agent was held liable for fire damage after his customer requested a new policy to replace one cancelled by the insurer, and the agent neither procured such a replacement policy nor alerted the customer to this failure by returning the unearned portion of the premium from the original policy. *Id.* at 458.

First, Grease Monkey pleaded that Whisenant breached its duty to obtain liability insurance for Grease Monkey. However, Grease Monkey, has failed to controvert Whisenant's evidence that Whisenant advised Grease Monkey that Millers was not renewing Grease Monkey's policy, that Whisenant attempted to place Grease Monkey's request for coverage, and that Whisenant advised Grease Monkey that it was unable to do so. Dkt. No. 29, Ex. 5-8. Therefore, this Court concludes that Grease Monkey has failed to raise a genuine issue of material fact as to its claim of negligence, and therefore grants Whisenant's motion for summary judgment on Grease Monkey's third party negligence claims. Whisenant has documented not only its repeated attempts to place Grease Monkey's request for liability insurance coverage, but also its numerous letters to Grease Monkey informing the company that Millers was not renewing the liability part of Grease Monkey's policy.

### 2. Breach of Contract

Second, Grease Monkey pleaded that Whisenant was liable to it for breaching its

agreement to provide liability insurance for Grease Monkey. In Texas an insurance agent may be sued for breach of contract if he fails to procure insurance for his client. Turner-Bass Assoc. of Tyler v. Williamson, 932 S.W.2d 219, 222-23 (Tex. App.–Tyler 1996, writ denied). "A suit will lie for a breach of the obligation to procure insurance." O.R. Mitchell Motors, Inc. v. Joe Marotta & Sons, Inc., 358 S.W.2d 741, 743 (Tex. Civ. App.--San Antonio 1962, no writ); see also Jack Criswell Lincoln Mercury, Inc. v. Tsichlis, 549 S.W.2d 255, 258 (Tex. Civ. App.--Beaumont 1977, no writ) (noting that breach of duties accompanying agreement to procure insurance gives rise to both breach of contract and tort claims). To establish a breach of contract claim, Plaintiff must establish (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. Aguiar v. Segal, 167 S.W.3d 442, 450 (Tex. App.–Houston [14th Dist.] 2005, no pet.).

Grease Monkey has failed to establish the existence of a contract between it and Whisenant to procure general liability insurance for the oil-change garage. Rather, if any agreement existed between Grease Monkey and Whisenant, the uncontroverted evidence shows that that agreement only required Whisenant to use its best efforts to place the policy for insurance with other carriers. In the absence of any evidence that Whisenant breached this duty, this Court finds that Grease Monkey has failed to raise a genuine issue of material fact as to its breach of contract claim, and therefore Whisenant is entitled to summary judgment in its favor against the claim.

### 3. Negligent Misrepresentation

Finally, Grease Monkey claims that Whisenant negligently misrepresented that it had procured business liability insurance for Grease Monkey. The elements of a cause of action for negligent misrepresentation are: (1) a representation made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) that the defendant supplies "false information" for the guidance of others in their business; (3) that the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) that the plaintiff suffers pecuniary loss by justifiably relying on the representation. Federal Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442

(Tex. 1991).

Here, Grease Monkey has not presented any evidence that Whisenant made any representation that it had procured coverage for Grease Monkey. Rather, the uncontroverted evidence shows that Grease Monkey was fully aware of the nature and status of its insurance policy coverage. Whisenant informed Grease Monkey of Millers' intent to cancel the policy, informed Grease Monkey of the cancellation of its garage liability policy on three separate occasions, took steps to procure replacement coverage on Grease Monkey's behalf, and notified Grease Monkey of its inability to procure that replacement liability coverage. Therefore, this Court finds that Grease Monkey has failed to create a genuine issue of material fact as to whether Whisenant made any negligent misrepresentation. Therefore, Whisenant is entitled to summary judgment against Grease Monkey's negligent misrepresentation claim.

## III. Conclusion

Based on the foregoing, the Court **GRANTS** Plaintiff Clarendon National Insurance Company's Motion for Summary Judgment on Defendant's Counter-Claims, Dkt. No. 34, and Third Party Defendant Bert Whisenant Insurance Agency's Motion for Summary Judgment and Brief in Support. Dkt. No. 29.

DONE at Brownsville, Texas, on June 8, 2009.

Hilda G. Tagle
United States District Judge